## Komonyi, Administratrix v. Consolidation Coal Company.

(Decided December 20, 1918.)

### Appeal from Letcher Circuit Court.

1. Master and Servant—Duty of Master—Evidence—Sufficiency.— In an action for the death of a servant it is not sufficient to show a general breach of duty on the part of a master, but it must appear that there was a breach of duty owing to the deceased.

2. Master and Servant—Death—Negligence—Evidence—Sufficiency. —In an action for the death of a servant, evidence held insufficient to show negligence on the part of the master.

COOK & COMBS and F. W. STOWERS for appellant.

EDWARD C. O'REAR, ALLIE W. YOUNG and W. G. DEARING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Elizabeth Komonyi, as administratrix of her husband, Menyhert Komonyi, brought this suit against the Consolidation Coal Company to recover damages for his death. At the conclusion of the evidence for plaintiff, the trial court directed a verdict in favor of the defendant. Plaintiff appeals.

The accident occurred on the night of June 21, 1915, in defendant's mine, No. 214. Komonyi, Bill Potter and Steve Wimmer were engaged in laying track. To this end they used two electric motors which carried their tools and supplies. One of the motors was in charge of

Potter, while the other was in charge of Wimmer. After completing their work in an entry lying to the left of the main entry, they loaded their tools and supplies on the two motors and came out into the main entry for the purpose of going to another place where they had work to do. After proceeding a short distance they met a machine man *en route* in a motor to the place they had just left, for the purpose of cutting coal there. In order to let the machine man pass with his motor, they dropped the two motors into a cross entry. Wimmer's motor went in first and Potter's motor stopped a few feet from the track on the main entry and about three feet from Wimmer's motor. At this point the track on the cross entry was down grade. The trolley wire in the main entry did not extend into the cross entry, but the current into the cross entry was transmitted by what is called a machine wire. Attached to the machine wire was a "jumper," which is a small wire, a little over a foot in length. Ordinarily the "jumper" hung down when the machine wire was not in use, but when it became necessary to use the machine wire, the "jumper" was laid upon the trolley wire. The current was transmitted to the motor by means of a "nip," and the motorman made the connection by attaching one end of the "nip" to the live wire and the other end to the motor. Just prior to the accident Komonyi asked Wimmer, the operator of the rear motor, to give him a drink of water, and the latter handed him a bucket sitting on the front of the motor. There was a clearance of about three and one-half feet on the side of the motor where Komonyi could have taken his drink. Instead of doing this he stepped in between the two motors and kneeled down for the purpose of taking a drink. About that time Potter called out to Wimmer: "Let's go." Wimmer said, "All right, go on out." Potter applied his "nip" and released his brake, but as the "jumper" was not laid on the main entry wire there was no current on the machine wire, and the machine rolled backward, crushing Komonyi between it and the other motor.

It is argued that Potter was negligent in releasing his brake and applying the "nip" before he ascertained that the "jumper" was not on the trolley wire in the main entry. It is not sufficient in a case like this to show a mere general breach of duty, but it must appear that there was a breach of duty owing to the employee who

was killed.  Here, no duty was owing to the deceased unless the motorman knew of, or had reason to anticipate, his presence between the two motors.  That he did not know that the deceased was between the two motors is clearly established by the evidence.  It does not appear that the duties of the deceased required him to go between the motors.

On the contrary, there was sufficient room on the side of the motor to permit him to stand in safety and take his drink.  Instead of doing this, he went between the motors solely for his own convenience, and not for the purpose of performing any duty connected with his employment Of this purpose the motorman was not apprised.  Having no reason to anticipate his presence between the two motors, the motorman was not charged with the duty of looking back to see whether he was there or not.  Not being chargeable with either actual or constructive knowledge of the dangerous position occupied by the deceased, he owed no duty to the deceased to see that the current was on before the brake on the motor was released.  That being true, it follows that the trial court did not err in directing a verdict for the defendant.

Judgment affirmed.